# CLIFFORD CHANCE US LLP

# PARTNERSHIP AGREEMENT

## Dated February 8, 2001

### Restated to include amendments
### up to February 6, 2012

## TABLE OF CONTENTS

**Clause** | **Page**

1.  Continuation.....................................................................................................................1

2.  Interpretation...................................................................................................................2

3.  Effective Date ................................................................................................................5

4.  Nature of Business .........................................................................................................5

5.  Accounts .........................................................................................................................5

6.  Partners' Decisions and Partner Meetings......................................................................5

7.  Relationship of CCUS to CCLLP ..................................................................................7

8.  Limited Liability ............................................................................................................7

9.  Registration as a Limited Liability Partnership .............................................................8

10. CCUS Capital Accounts. ...............................................................................................8

11. Capital Contributions.....................................................................................................10

12. Distributions of Accounting Profits...............................................................................10

13. [Reserved] ......................................................................................................................11

14. Annuities. .......................................................................................................................11

15. Distributions on Liquidation of CCUS. .........................................................................12

16. Tax Withholding and Payment. ......................................................................................12

17. Allocation of Book Profits. ............................................................................................13

18. Allocation of Book Losses. ............................................................................................14

19. Allocation of Taxable Income and Loss. .......................................................................15

20. Physical or Mental Incapacitation..................................................................................16

21. Expulsion, Termination, Suspension and Withdrawal (Retirement) of CCUS Partners. ..........................................................................................................................16

22. Non-Equity Partners.......................................................................................................16

23. Devotion to Partnership Business. ..................................................................................17

24. Governance and Management of CCUS..........................................................................17

25. Pre-Retirement Benefits..................................................................................................17

26. Retirement and Post-Retirement Benefits.......................................................................18

27. Offsets.............................................................................................................................18

28. Admission of New Partners. ...........................................................................................18

29. Dissolution......................................................................................................................18

30. Amendments....................................................................................................................19

## TABLE OF CONTENTS
### (continued)

| Clause | | Page |
|---|---|---|
| 31. | Arbitration of Disputes. | 19 |
| 32. | Governing Law. | 20 |
| 33. | Notice. | 20 |
| 34. | Invalidity. | 20 |
| 35. | Construction of the CCUS Agreement. | 20 |

**PARTNERSHIP AGREEMENT
CLIFFORD CHANCE US LLP,
DATED:  FEBRUARY 8, 2001
RESTATED TO INCLUDE AMENDMENTS UP TO FEBRUARY 6, 2012**

This is the partnership agreement ("CCUS Agreement") by and among the partners of Clifford Chance US LLP ("CCUS") amended and restated as of February 6, 2012.  Capitalized terms shall have the meanings assigned to them in Clause 1.2 below or in the CCLLP Agreement.

The parties agree as follows:

**1.      Continuation**

1.1.     The CCUS Partners, under the name Clifford Chance US LLP, hereby continue the law practice formerly engaged in by certain of them and others as the firm of Clifford Chance Rogers & Wells LLP.

1.2.     When a CCUS Partner ceases to be a CCUS Partner, whether by death, retirement, withdrawal, expulsion, termination, or suspension, or new CCUS Partners are admitted to CCUS, the remaining CCUS Partners and any newly admitted CCUS Partners hereby irrevocably constitute themselves and agree to be continuing partners of CCUS and shall own all the assets of CCUS and be entitled thereafter to continue the business of CCUS for their own benefit and to continue to use the name of CCUS or some other name and, at their option, to continue to occupy some or all of the office space formerly occupied by a prior partnership pursuant to space obligations undertaken by a predecessor firm.  Retired CCUS Partners remain liable for all partnership obligations to the full extent provided for under the laws of the State of New York including Section 26 of the New York Partnership Law.

1.3.    CCUS continues to own all the assets of Clifford Chance Rogers & Wells LLP both tangible and intangible and may, from time to time and pursuant to the CCUS Agreement, acquire such additional assets as may be appropriate for the conduct of its business.

**2.    Interpretation**

2.1.    Expressions given special meaning in the CCLLP Agreement (including the Policies made under it) bear the same meaning in this Agreement unless the context requires otherwise.

2.2.    In this Agreement, the terms listed below shall have the meanings appearing opposite such terms:

| | |
|---|---|
| Accounting Profits and Losses: | those profits and losses of CCUS for a Financial Year calculated in the manner specified in the CCLLP Agreement with proper adjustment for the amount allocated to Non-Equity Partners in accordance with the penultimate sentence of Clause 22.2. |
| Annuity: | any annuity or other payment to which a Retired Partner is entitled to receive pursuant to applicable provisions of the CCLLP Agreement. |
| Book Profits and Losses: | the profits and losses of CCUS for a Financial Year calculated on a cash basis using U.S. federal income tax principles, with appropriate adjustments to take into account receipts or disbursements that are excluded from the calculation of gross income or that are not deductible or capitalized for U.S. federal income tax purposes, and for profits and losses allocated to Non-Equity Partners in accordance with the penultimate sentence of Clause 22.2. |
| Capital Account: | an account established by and for each CCUS Partner and Retired CCUS Partner in accordance with the provisions of Clause 10. |
| CCLLP Agreement: | the CCLLP Partnership Agreement effective December 1, 2006, as it may be amended or restated from time to time. |

| | |
|---|---|
| CCLLP: | Clifford Chance LLP, a limited liability partnership incorporated in England and Wales (registered number 0C323571), whose registered office is at 10 Upper Bank Street, London E14 5JJ. |
| CCLLP Equity Partner: | an Equity Partner as defined in the CCLLP Agreement. |
| CCLLP Non-Equity Partner: | a Non-Equity Partner as defined in the CCLLP Agreement. |
| CCUS: | the New York limited liability partnership registered under the name Clifford Chance US LLP. |
| CCUS Agreement: | the Amended and Restated Partnership Agreement effective January 1, 2000 by and among the CCUS Partners. |
| CCUS Assets: | any and all things, tangible and intangible, fixed or contingent, including partial interests, which CCUS owns, including, but not limited to real property, undistributed cash, accounts receivable, unbilled charges, contributed capital, leases, library, furnishings, equipment, supplies, trademarks, copyrights, proceeds of insurance, judgments, settlements, claims, rights, stocks, bonds, and notes. |
| CCUS Partner: | CCLLP or an attorney or other person (including Equity Partners and Non-Equity Partners) who is registered as a CCUS Partner pursuant to Clause 28. |
| CCUS Partnership Interest: | any and all rights, interests or claims under the CCUS Agreement, or the laws of the State of New York (to the extent not inconsistent with this agreement), which a CCUS Partner, by reason of that status, may have against CCUS or any of the other CCUS Partners, to income, distributions, profits, cash, or partnership assets, benefits, or things of value of CCUS. |
| Code: | the U.S. Internal Revenue Code of 1986, as amended, and any successor revenue law. |
| Equity Partner: | a person admitted to CCUS in that position from time to time. |
| Group: | CCLLP and all Associated Firms. |
| Group Profit Entitlement: | a CCUS Partner's or Retired CCUS Partner's aggregate entitlement to distributions from the |

- 3 -

|  | Group with respect to a Financial Year pursuant to the CCLLP Agreement. |
|---|---|
| Non-Equity Partner | a person admitted to CCUS in that position from time to time. |
| Partnership Profit Entitlement: | a CCUS Partner's or Retired CCUS Partner's aggregate entitlement to distributions from CCUS with respect to a Financial Year in accordance with the provisions of Clause 12. |
| Profit Allocation Excess: | for any CCUS Partner or Retired CCUS Partner the amount by which the allocation of Book Profits for a Financial Year to such partner or retired partner pursuant to Clause 17.4 exceeds the Partnership Profit Entitlement of such CCUS Partner or Retired CCUS Partner for such Financial Year. |
| Profit Allocation Shortfall: | for any CCUS Partner or Retired CCUS Partner the amount by which the Partnership Profit Entitlement of such Partner or Retired CCUS Partner for a Financial Year exceeds the allocation of Book Profits for such Financial Year to such Partner or Retired CCUS Partner pursuant to Clause 17.4. |
| Retired CCUS Partner: | a CCUS Partner (1) who has withdrawn (retired) from CCUS pursuant to the applicable provisions of the CCLLP Agreement, and the estate of a deceased CCUS Partner, or (2) whose status as a CCUS Partner has otherwise been terminated. |
| Tax Payment: | amounts paid to tax authorities for a CCUS Partner or a Retired CCUS Partner with respect to a Financial Year in accordance with the applicable provisions of the CCLLP Agreement. |
| Tax Reserve: | for each CCUS Partner or Retired CCUS Partner the reserve for tax liabilities established out of such CCUS Partner's or Retired CCUS Partner's share of Partnership Profits for a Financial Year pursuant to applicable provisions of the CCLLP Agreement, reduced by the amount of the reserve for non-US tax established in respect of the CCUS Partner's or Retired CCUS Partner's share of the profits of CCLLP or any other Associated Firm for the Financial Year. |
| Tax Reserve Percentage: | the ratio, expressed as a percentage, that the amount of the Tax Reserve for a CCUS Partner or a Retired CCUS Partner bears to such CCUS Partner's or |

Retired CCUS Partner's share of Partnership Profit Entitlement for a Financial Year.

Vote:                                       any oral or written indication of consent.

## 3.    Effective Date

With effect from February 6, 2012, this Agreement replaces the partnership agreement of CCUS dated February 8, 2001.

## 4.    Nature of Business

The business of CCUS shall continue to be the practice of law and related activities.

## 5.    Accounts

5.1.    The financial year of CCUS shall coincide with the Financial Year of CCLLP.

5.2.    CCUS shall keep accounting records which are sufficient to enable the preparation of accounts in accordance with the CCLLP Agreement.

5.3.    The annual accounts of CCUS shall be audited by the auditors of CCLLP.

## 6.    Partners' Decisions and Partner Meetings

6.1.    The following provisions describe those voting procedures to be used when CCUS Partners are invited to vote on matters of principal or exclusive interest to partners of CCUS:

6.1.1.    Each CCUS Partner is entitled to vote on any resolution concerning a matter reserved for decision by partners pursuant to the CCLLP Agreement, provided that Non-Equity Partners are not entitled to vote on a resolution which concerns matters reserved for decision by Equity Partners only pursuant to the CCLLP Agreement.

6.1.2.    Each CCUS Partner is entitled to one Vote on a matter for which he or it is entitled to vote in that capacity.  Unless specifically requested by a majority of

- 5 -

more than 50% of votes cast by CCUS Partners, there shall be no formal record of CCUS partnership meetings.

6.1.3.    Partner voting shall be by secret ballot pursuant to such method (including electronic means) as the Regional Managing Partner (Americas) may specify.  Votes may be tallied by a person approved for that purpose by the Regional Managing Partner (Americas).

6.1.4.    A partner may appoint, in writing, another partner to vote as his proxy and may (but need not) direct how the proxy appointed is to cast his vote.  The proxy shall deliver evidence of his appointment to the person designated to tally the votes of partners prior to, or contemporaneously with, the submission of such vote.

6.1.5.    Unless otherwise indicated herein, any matter requiring a decision of the CCUS Partners, whether arising pursuant to this Agreement or otherwise, may be decided by a resolution carried by a majority of not less than 50.1% of the votes that may be cast by those partners.

6.2.    Meetings of CCUS Partners shall be held pursuant to the terms of the following provisions:

6.2.1.    The Regional Managing Partner (Americas) may convene a meeting of CCUS Partners or Equity Partners.

6.2.2.    A meeting of CCUS Partners shall be held when at least a tenth of the CCUS Partners has made written requests to the Regional Managing Partner (Americas) or, in his absence, to the Senior Partner, to convene a meeting.

6.2.3.    A meeting of Equity Partners shall be held when at least a tenth of the Equity Partners has made written requests to the Regional Managing Partner (Americas)

or, in his absence, to the Senior Partner. The Regional Managing Partner (Americas) may determine whether Non-Equity Partners may attend meetings of Equity Partners.

### 7. Relationship of CCUS to CCLLP

7.1. It is the intent of the CCUS Agreement that it shall in all respects conform to and be consistent with the terms of the CCLLP Agreement.

7.2. Each Equity Partner (other than CCLLP) and Non-Equity Partner shall also at all times be a partner in CCLLP.

7.3. Any withdrawal, retirement, expulsion, termination, or suspension of an Equity Partner or Non-Equity Partner of either CCUS or of CCLLP (to the extent that a CCLLP Partner is also then a CCUS Partner), pursuant to this agreement, shall have the effect intended by that action in respect of that Partner's relationship to both CCUS and CCLLP.

### 8. Limited Liability

8.1. The losses and debts of CCUS shall be satisfied solely and exclusively from CCUS Assets, and no CCUS Partner, or Retired CCUS Partner shall have any personal liability for any losses or debts of CCUS except (i) as may be otherwise required by law; (ii) for any post January 1, 2000 contractual commitment or other obligation of CCUS for which, by its terms, CCUS Partners or Retired CCUS Partners have accepted personal liability and as to which the provisions of Clause 8.2 have been observed; or (iii) as provided in the CCLLP Agreement.

8.2. CCUS may enter into written agreements which waive, limit, or modify CCUS Partners' limited liability for the unsatisfied commitments or obligations of CCUS. Any such written agreement, when entered after the required notice has been given, shall be deemed to constitute the agreement of the CCUS Partners to accept for themselves such personal liability for purposes of Section 26(d) of the New York Partnership Law.

8.3.    CCUS Partners may be reimbursed by CCUS for reasonable expenditures made by them for the benefit of CCUS, or in furtherance of their professional practice, so long as any such reimbursement is in accord with policies and procedures of CCUS or CCLLP.

8.4.    A CCUS Partner or Retired CCUS Partner may be indemnified by CCUS or seek satisfaction for liabilities for which he has personal liability, only pursuant to the applicable provisions of the CCLLP Agreement.

8.5.    The extent, if any, to which any obligation, loss or debt for which CCUS Partners or Retired CCUS Partners have personal liability is also assumed by or otherwise becomes the obligation of CCLLP and the Associated Firms, or for which CCLLP and the Associated Firms have agreed to indemnify such partners, is described in the CCLLP Agreement.

8.6.    A CCUS Partner or Retired CCUS Partner shall be deemed to make a capital contribution to CCUS to the extent such Partner satisfies his personal liability for the obligations, losses and debts of CCUS.

9.    **Registration as a Limited Liability Partnership**

The Partnership has been registered as a limited liability partnership in the State of New York with effect from January 1, 2000. CCUS Partners shall take all necessary actions to maintain such registration and shall take all other actions which may be necessary or advisable from time to time to ensure that CCUS Partners shall be entitled to protection from liability to the extent provided by New York Partnership Law section 26(b).

10.    **CCUS Capital Accounts.**

10.1.    Except as provided in Clause 10.5, each CCUS Partner and Retired CCUS Partner shall have a Capital Account to which will be credited that partner's or retired partner's share of CCUS' Book Profits and any contribution of cash or property, and from which will be

debited that partner's or retired partner's share of CCUS' Book Losses (or items of gross deduction or loss to the extent allocated pursuant to Clause 18) and any distributions of cash or property by CCUS to the CCUS Partner or Retired CCUS Partner. Capital Accounts will be maintained and adjusted in accordance with the rules for the maintenance of capital accounts found in Section 704 of the Code using the cash method of accounting. Until returned as provided in the CCUS Agreement, balances in Capital Accounts constitute CCUS Assets. No Capital Account will include any value for accounts receivable, unbilled charges, leasehold interests, contract rights, or contingent assets.

10.2. As soon as practicable after the beginning of a new Financial Year, each CCUS Partner and Retired CCUS Partner having a Capital Account shall receive from CCUS' independent auditors a schedule prepared by those auditors showing the balance in his Capital Account as of the first day of that Financial Year. The auditor's determination of Capital Account balances shall be conclusive.

10.3. A CCUS Partner's or Retired CCUS Partner's Capital Account and his entitlement to distributions and annuities and allocations of Book Profits and Book Losses and all other rights and obligations under the CCUS Agreement shall be non-transferable and non-assignable and may not be hypothecated for any reason without the prior approval of the Management Committee.

10.4. CCUS has no good will and no CCUS Partner or Retired CCUS Partner, or the estate of any former CCUS Partner or Retired CCUS Partner will be entitled to any payment, credit or consideration based upon the existence of CCUS good will.

10.5. The Capital Account of a Retired CCUS Partner will be eliminated following the completion of all distributions to such Retired CCUS Partner pursuant to Clause

12, the completion of all tax withholdings and payments on behalf of such Retired CCUS Partner pursuant to Clause 16, and the completion of allocations to such CCUS Partner pursuant to Clauses 17 through 19.

### 11.    Capital Contributions.

11.1.    Except as provided in Clause 8.6 above, or in the CCLLP Agreement in respect of capital contributions to CCLLP by CCUS Partners who are CCLLP Equity Partners, no CCUS Partner or Retired CCUS Partner, other than CCLLP, shall have any obligation to make capital contributions to CCUS.  CCLLP shall be required to make a capital contribution to CCUS on the last day of each Financial Year (or if the last day of a Financial Year is not a business day in which banks are open in London and New York, on the preceding such business day) in an amount sufficient to cause the positive balance of the Capital Account of CCLLP on the first day of the succeeding Financial Year to exceed 60% of the aggregate Capital Account balances of all CCUS Partners and Retired CCUS Partners.

11.2.    It is the intention of the CCUS Partners and Retired CCUS Partners that the Capital Account of CCLLP shall at all times during the Financial Year exceed 60% of the aggregate Capital Account balances.  If, during the course of a Financial Year, it appears that the Capital Account of CCLLP is not likely to exceed 60% of the aggregate Capital Account balances, CCLLP shall make such additional capital contribution as is reasonably necessary to cause its Capital Account to exceed 60% of the aggregate Capital Account balances at all times during the Financial Year.

### 12.    Distributions of Accounting Profits.

12.1.    Except as provided in Clause 15 (Distributions on Liquidation), the CCUS Partners and Retired CCUS Partners (other than CCLLP) shall be entitled to receive distributions from CCUS for each Financial Year equal to the lesser of (i) their aggregate Group Profit

Entitlements for such Financial Year and (ii) 99% of the Accounting Profits, if any, for the Financial Year in proportion to their respective Group Profit Entitlements for such Financial Year. CCLLP shall be entitled to receive distributions for each Financial Year equal to the excess of the Accounting Profits, if any, for a Financial Year over the aggregate Partnership Profit Entitlement of all other CCUS Partners and Retired CCUS Partners for the Financial Year.

12.2.    Notwithstanding anything else to the contrary, no CCUS Partner or Retired CCUS Partner (other than CCLLP) shall receive distributions of Accounting Profits from CCUS for any Financial Year in an amount that would result in a violation of the provisions of the last sentence of Clause 17.6.

13.    **[Reserved]**

14.    **Annuities.**

14.1.    A Retired CCUS Partner may be eligible to receive an Annuity from the Partnership in the manner and amounts and at the times set forth in the CCLLP Agreement. Payment of any such Annuity shall be in full satisfaction and full accounting of that retired partner's CCUS Partnership Interest. Payment of any Annuity shall be an expense of CCUS and shall not represent any continuing interest in CCUS.

14.2.    A Retired CCUS Partner shall not be entitled to participate in or receive any other payments or distributions from CCUS other than those payments and distributions to which he is entitled as provided in Clause 12, this Clause 14, and Clause 15.

14.3.    Each CCUS Partner agrees that no portion of any Annuity shall be granted in exchange for such partner's interest in CCUS assets, and that the payment of an Annuity shall constitute a "guaranteed payment," all within the meaning of Section 736(b) of the Code. Each CCUS Partner who receives an Annuity as a Retired CCUS Partner agrees to make all appropriate federal income tax filings on the basis described in the previous sentence. The

acceptance of an Annuity by a Retired CCUS Partner shall constitute his agreement to comply with the provisions of this Clause 14.

**15.     Distributions on Liquidation of CCUS.**

15.1.    Subject to the CCLLP Agreement, distributions, if any, in liquidation of CCUS pursuant to Clause 29 or otherwise shall be made among the CCUS Partners and the Retired CCUS Partners in the same ratio as the positive balance in each of their respective Capital Accounts bears to the aggregate of the positive balances of all such Capital Accounts upon the completion of such liquidation.

15.2.    Except as provided in Clause 8, no CCUS Partner or Retired CCUS Partner having a negative balance in such CCUS Partner's or Retired CCUS Partner's Capital Account shall be required to make any payment to CCUS or to the other CCUS Partners and Retired CCUS Partners on account of such negative balance.

**16.     Tax Withholding and Payment.**

CCUS shall withhold from the aggregate distributions of the Partnership Profit Entitlement of each CCUS Partner and Retired CCUS Partner (other than CCLLP) for a Financial Year an amount equal to the Tax Reserve Percentage of such distributions.  The amounts so withheld shall be (a) applied to make Tax Payments to US tax authorities and in respect of Partnership Profit Entitlement to non-US tax authorities on account of such Financial Year for such CCUS Partner or Retired CCUS Partner (at which time such amounts will be treated as having been distributed to such CCUS Partner or Retired CCUS Partner for purposes of Clause 10.1), (b) applied to make a payment to each CCUS Partner or Retired CCUS Partner to enable him to make a payment of tax to the US tax authorities, or (c) to the extent not so applied and subject to any decision to the contrary under the CCLPP Agreement, returned to the CCUS Partner or Retired CCUS Partner not later than the final tax payment date for the year in

which the Partnership Profit Entitlement for the Financial Year for which the amounts were withheld has been subject to tax.

**17.    Allocation of Book Profits.**

Book Profits of CCUS for a Financial Year shall be allocated among the CCUS Partners and Retired CCUS Partners in the following order of priority:

17.1.    First, to the CCUS Partners and Retired CCUS Partners who have received allocations of Book Losses pursuant to Clause 18.1.3 for a prior Financial Year, in the amount of, and in proportion to, such prior allocations of Book Losses, to the extent not offset by previous allocations of Book Profits pursuant to this Clause 17.1.

17.2.    Second, to the Retired CCUS Partners having Profit Allocation Shortfalls for any prior Financial Year or the current Financial Year (taking into account the allocations for the current Financial Year pursuant to this Clause 17 and Clause 18), in proportion to their respective aggregate Profit Allocation Shortfalls for all prior Financial Years and the current Financial Year, until the amount allocated pursuant to this Clause 17.2 equals the aggregate Profit Allocation Shortfalls of all Retired CCUS Partners for all prior Financial Years and the current Financial Year;

17.3.    Third, to the CCUS Partners having Profit Allocation Shortfalls for any prior Financial Year, in proportion to their respective aggregate Profit Allocation Shortfalls for all prior Financial Years until the amount allocated pursuant to this Clause 17.3 equals the aggregate Profit Allocation Shortfalls of all CCUS Partners for all prior Financial Years; and

17.4.    Fourth, to the CCUS Partners and Retired CCUS Partners in proportion to their respective Partnership Profit Entitlements for the Financial Year.

17.5.    To the extent that following all capital contributions pursuant to Clause 11, distributions pursuant to Clauses 12 and 15, the completion of all tax withholdings and payments pursuant to Clause 16, and the allocations of Book Profits pursuant to this Clause 17, a CCUS Partner or a Retired CCUS Partner would have at the close of a Financial Year a deficit balance in his Capital Account, Book Profits shall be reallocated to such CCUS Partner or Retired CCUS Partner, to the extent that such reallocation of Book Profits does not create or increase the deficit balance in the Capital Account of any other CCUS Partner or Retired CCUS Partner at the close of such Financial Year, and the remaining Book Profits shall be reallocated in the order of priority set forth in Clauses 17.1 through 17.4.

17.6.    Notwithstanding anything else to the contrary, the amount of Book Profits for a Financial Year that is allocated to any one CCUS Partner or Retired CCUS Partner (other than CCLLP) directly and/or indirectly through CCLLP shall not exceed 4.9%.

**18.    Allocation of Book Losses.**

Book Losses of the Partnership for a Financial Year shall be allocated among the CCUS Partners and Retired CCUS Partners in the following order of priority:

18.1.    First, to the Retired CCUS Partners having Profit Allocation Excesses for any prior Financial Year or the current Financial Year (taking into account the allocations for the current Financial Year pursuant to Clause 17 and this Clause 18), in proportion to their respective aggregate Profit Allocation Excesses for all prior Financial Years and the current Financial Year, until the amount allocated pursuant to this Clause 18.1 equals the aggregate Profit Allocation Excesses of all Retired CCUS Partners for all prior Financial Years and the current Financial Year;

18.2.    Second, to the CCUS Partners having Profit Allocation Excesses for any prior Financial Year, in proportion to their respective aggregate Profit Allocation Excesses for all

prior Financial Years until the amount allocated pursuant to this Clause 18.2 equals the aggregate Profit Allocation Excesses of all CCUS Partners for all prior Financial Years; and

18.3.   Third, to the CCUS Partners and Retired CCUS Partners in proportion to their respective Partnership Profit Entitlements for the Financial Year.

18.4.   Notwithstanding anything else to the contrary other than what is stated in the following sentence, if any Retired CCUS Partner has a Profit Allocation Excess for a prior Financial Year or the current Financial Year and there are not sufficient Book Losses for the current Financial Year (or there are Book Profits for the current Financial Year) there shall be allocated to such Retired CCUS Partner items of gross deduction or loss for the current Financial Year sufficient to achieve the Clause 18.1 allocations, and the Book Profits or Book Losses shall be recomputed without taking into account such items of gross deduction or loss, and the Book Profits or Book Losses so calculated shall thereafter be allocated pursuant to the provisions of Clause 17 or this Clause 18, as appropriate. Notwithstanding anything else to the contrary, the amount of Book Losses for a Financial Year that is allocated to any one CCUS Partner or Retired CCUS Partner (other than CCLLP) directly and/or indirectly through CCLLP shall not exceed 4.9%.

**19.**   **Allocation of Taxable Income and Loss.**

For federal, state and local income tax purposes, items of income, gain, loss and deduction shall be allocated to the CCUS Partners and Retired CCUS Partners in accordance with the allocations of the corresponding items of Book Profits and Book Losses, except that items with respect to which there is a difference between tax and book basis will be allocated in accordance with the principles of Section 704(c) of the Code.

**20.**     **Physical or Mental Incapacitation.**

The rights and obligations of CCUS, and any CCUS Partner who becomes physically or mentally incapacitated, in respect of such incapacitation, will be governed by the applicable provisions of the CCLLP Agreement.

**21.**     **Expulsion, Termination, Suspension and Withdrawal (Retirement) of CCUS Partners.**

A CCUS Partner may voluntarily withdraw (retire) from CCUS  pursuant to the applicable provisions of the CCLLP Agreement.  A CCUS Partner may be expelled, terminated, or suspended from CCUS only pursuant to the applicable provisions of the CCLLP Agreement and with the consequent effect described in Clause 7.

**22.**     **Non-Equity Partners.**

22.1.    CCUS may enter into agreements having the effect of (i) admitting Non-Equity Partners to CCUS or (ii) converting an Equity Partner to the status of Non-Equity Partner, subject to any applicable restrictions, procedures or limitations as may be contained in the CCLLP or CCUS Agreements.  Non-Equity Partners shall have those rights and obligations specified in their individual agreements with CCUS or in the provisions of the CCLLP Agreement applicable to such persons.

22.2.    Notwithstanding anything else to the contrary, no Non-Equity Partner shall have a Capital Account, or be entitled to distributions or Annuities as described in Clause 12, Clause 14, or Clause 15.  No Non-Equity Partner shall be subject to Clause 16, or be allocated Book Profits or Book Losses under Clause 17 and Clause 18 or taxable income or loss under Clause 19.  Rather, each Non-Equity Partner shall be entitled to such distributions and annuities, shall be subject to withholding of such reserves for Taxes, and shall be allocated such profits and losses and taxable income or loss as may be agreed to between CCUS and such Non-

Equity Partner as appropriate. The provisions of this section shall not apply to any periods during which a Non-Equity Partner was an Equity Partner.

**23.    Devotion to Partnership Business.**

23.1.    Each CCUS Partner who is primarily based in the US (and excluding CCLLP) shall devote his whole time and attention to the business of CCUS during normal business hours and at such other times as shall be necessary for the proper performance of his duties unless his absence therefrom is permitted or required pursuant to applicable provisions of the CCLLP Agreement.

23.2.    No CCUS Partner will become a public official, or an officer, executive, director, consultant, or similar position with or of another firm, corporation, person, or other entity, or act as a trustee, administrator, guardian, executor, or in other similar capacities, without approval in accordance with the policies and procedures of CCLLP.

23.3.    The Management Committee shall have the power to determine the basis of and extent to which a CCUS Partner accounts to the Partnership for any benefit or remuneration received from any directorship, trusteeship or other office or position.

**24.    Governance and Management of CCUS.**

24.1.    The Partnership shall have a US-resident managing partner.

24.2.    CCUS Partners shall act in accordance with the obligations in the CCLLP Agreement that relate to Associated Firms.

24.3.    Subject to Clauses 24.1 and 24.2, every CCUS Partner may take part in the management of the business of CCUS.

**25.    Pre-Retirement Benefits.**

CCUS may, from time-to-time, make life, disability, and health insurance plans available to CCUS Partners and others at the firm, on such terms and in such amounts as it

believes appropriate and consistent with any provision of the CCLLP Agreement relating to such benefits including, specifically, those provisions relating to compulsory insurance.

26.     **Retirement and Post-Retirement Benefits.**

The provisions of the CCLLP Agreement relating to the retirement of partners, and the availability of any post-retirement benefits for retired partners (including payments upon the death of any retired partner) will govern the retirement of Equity Partners and the availability to them of post-retirement benefits, including benefits payable upon death.

27.     **Offsets.**

CCUS may offset any amounts owed to it by any CCUS Partner or Retired CCUS Partner against any portion of such partner's interest in CCUS Assets or against amounts otherwise payable by CCUS to such partner, former partner, or estate of a deceased partner.

28.     **Admission of New Partners.**

The admission of new partners to CCUS will be governed by the relevant provisions of the CCLLP Agreement.

A person may only become a CCUS Partner if:

28.1.   he is a CCLLP Equity Partner, a CCLLP Non-Equity Partner or an Approved Person, as defined in the CCLLP Agreement;

28.2.   CCLLP so agrees and specifies whether he will be an Equity Partner or Non-Equity Partner; and

28.3.   his name is entered in an appropriate register.

29.     **Dissolution.**

Subject to the provisions of the CCLLP Agreement, the CCUS Partners will, if an ordinary majority (66.7% of those voting) so resolves, dissolve CCUS as of a day specified at the time of the vote.  Upon dissolution of CCUS, its activities will terminate, subject to the

provisions of the CCLLP Agreement, and the net CCUS Assets will be distributed as promptly as practicable to the CCUS Partners (after setting aside sufficient reserves for known and contingent obligations of CCUS).

**30. Amendments.**

This CCUS Agreement will be amended as required by (or to the extent consistent with) the CCLLP Agreement but not otherwise.

**31. Arbitration of Disputes.**

31.1. Any claim in contract, tort or otherwise arising out of or relating to the CCUS Agreement or the partnership relationship, including without limitation claims of discrimination in violation of federal or state statutes, shall be resolved in accordance with the applicable dispute resolution procedures specified in the CCLLP Agreement. Each party hereby waives any right to punitive, exemplary or treble damages, and the arbitrator shall not be required to reinstate a former Partner. The provisions of this section shall survive termination of the CCUS Agreement and the partnership relationship and shall apply to Retired CCUS Partners and to the estate or conservator of a Retired CCUS Partner.

31.2. The preceding notwithstanding, if the dispute between CCUS Partners, or Retired CCUS Partners arises out of a third-party claim (e.g., professional liability or other claims of tortious conduct), CCUS may elect, in its sole discretion, to engage in litigation both with the third party claimant and with any CCUS Partner to the extent the dispute arises out of or pertains to the third-party claim.

31.3. All proceedings conducted pursuant to this section shall be confidential. To the extent the dispute involves third parties, CCUS and the individual CCUS Partner, or Retired CCUS Partner, claimants shall use their best efforts to maintain the confidentiality of the proceeding.

**32.    Governing Law.**

The CCUS Agreement shall be governed by the law of the State of New York without regard to its conflict of laws rules.

**33.    Notice.**

Any notice required to be given under the CCUS Agreement shall be given in accordance with the notice provisions contained in the CCLLP Agreement.

**34.    Invalidity.**

If any provisions of the CCUS Agreement shall be or become wholly or partially invalid or incapable of implementation, such invalidity or incapacity shall not affect the validity of the remaining provisions of the CCUS Agreement.

**35.    Construction of the CCUS Agreement.**

In interpreting the terms of the CCUS Agreement, the masculine shall include the feminine and vice versa, and the plural shall include the singular and vice versa. Where in the agreement reference is made to any statutory enactment, such reference shall be deemed to include any statutory modification or re-enactment thereof. Section headings are included for ease of reference and do not form any part of the CCUS Agreement.

Dated: New York, New York
       February 6, 2012