# EXHIBIT E

Case 1:26-cv-25508-JHR   Document 1-5   Filed 06/29/26   Page 2 of 8



NEW YORK
CITY BAR

COMMITTEE REPORTS

# Formal Opinion 2025-3: Permissibility of Financial Disincentives Associated With a Lawyer's Departure From a Law Firm

**Date**

August 13, 2025

## SUMMARY

The **Professional Ethics Committee** issued an ethics opinion holding that law firms may not impose financial penalties or disincentives, such as forfeitable bonuses, conditional loan forgiveness, deferred compensation, or capital deductions that have the effect, either expressly or in practice, of discouraging lawyers from leaving the firm to join a competitor. Such provisions violate Rule 5.6(a) of the New York Rules of Professional Conduct, which prohibits agreements that restrict a lawyer's right to practice after leaving a firm, except in the context of retirement. The opinion emphasizes that the focus is not on the intent behind the financial terms, but on their practical effect specifically, whether they deter competition and limit client choice. Even facially neutral provisions may be impermissible if they are applied in a way that penalizes lawyers who choose to compete. However, financial terms that apply uniformly to all departures, regardless of the lawyer's next role, or that are based on legitimate, non-competitive considerations (such as fiduciary compliance or personal circumstances), are generally acceptable. Ultimately, any financial arrangement that restricts a

Case 1:26-cv-25508-JHR   Document 1-5   Filed 06/29/26   Page 3 of 8

departing lawyer's ability to compete or impedes clients' freedom to choose counsel is deemed unethical under Rule 5.6(a).

# REPORT

### THE NEW YORK CITY BAR ASSOCIATION COMMITTEE ON PROFESSIONAL ETHICS

### FORMAL OPINION 2025-3: PERMISSIBILITY OF FINANCIAL DISINCENTIVES ASSOCIATED WITH A LAWYER'S DEPARTURE FROM A LAW FIRM

**TOPIC**: Law firm lawyer retention policies, financial disincentives, conditional loan forgiveness, withholding of deferred payments that have the effect, either expressly or in practice, of discouraging or deterring competition with the firm.

**DIGEST**: The implementation by law firms of partnership or employment financial terms, including but not limited to payments in the form of forgivable loans, bonuses, deferred compensation, withdrawal payments, deductions from capital or otherwise that are automatically forfeitable or forfeitable at the discretion of the firm, that have the effect, either by their express terms or in practice, of discouraging or deterring competition with the law firm by lawyers who leave the law firm, is impermissible under Rule 5.6(a) of the New York Rules of Professional Conduct.

**RULE:** Rule 5.6(a)

**QUESTION:**  May a law firm impose financial terms, including but not limited to payments in the form of forgivable loans, bonuses, deferred compensation, withdrawal payments, deductions from capital that are expressly forfeitable or forfeitable at the discretion of the firm, that have the effect, either by their express terms or in practice, of discouraging or deterring competition with the firm?

**DISCUSSION:**

Ever since the seminal Court of Appeals decisions in *Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95 (1989), and *Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375 (1993), it has been established that:

Case 1:26-cv-25508-JHR   Document 1-5   Filed 06/29/26   Page 4 of 8

restrictions on the practice of law [imposed by law firms on departing partners], which include "financial disincentives" against competition as well as outright prohibitions, are objectionable primarily because they interfere with the client's choice of counsel: a clause that penalizes a competing attorney by requiring forfeiture of income could "functionally and realistically discourage" a withdrawing partner from serving clients who might wish to be represented by that lawyer.

*Denburg*, 82 N.Y.2d at 380, *citing Cohen,* 75 N.Y.2d 95.[1] Those decisions have made clear that such provisions are a violation of Disciplinary Rule 2-108(A) of Code of Professional Responsibility and its successor, Rule 5.6(a) of the Rules of Professional Conduct (the "Rules").

Notably, in so holding, the *Cohen* court expressly cautioned against a categorical interpretation or application of its ruling and in *Denburg*, further explained that "unlike outright prohibitions on the practice of law, agreements involving financial disincentives are not per se illegal but depend on the particular terms and circumstances." At the same time, the *Denberg* court made clear that the defining consideration in determining whether such financial disincentives are prohibited is not the intent of the clause but whether "its *effect* is to improperly deter competition and thus impinge upon clients' choice of counsel." *Denburg*, 82 N.Y.2d at 381 (emphasis added). Thus, where the effect of the clause is to impose a "significant monetary penalty . . . if the withdrawing partner practices competitively with the former firm [it] constitutes an impermissible restriction on the practice of law." *Cohen*, 75 N.Y.2d at 98; *Denburg*, 82 N.Y.2d at 380-81.[2]

In the wake of *Cohen* and *Denberg*, firms began adopting other provisions and devices that differed from the specific provisions prohibited in those cases, but whose purpose and effect was still to avoid payments to departing partners[3] who competed. *See Matter of Hackett v. Milbank, Tweed, Hadley & McCloy*, 86 N.Y.2d 146, 156 (1995). Given the wide variety of forms these financial disincentives take, we provide guidance as to the factors that should be determinative as to whether these financial disincentives violate the Rules.

The question of whether such financial disincentives are ethically[4] permissible is governed by Rule 5.6, in particular Rule 5.6(a)(1). Rule 5.6(a)(1) provides, in relevant part:

(a) A lawyer shall not participate in offering or making:

> (1) a partnership, shareholder, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement . . . .

Rule 5.6(a)(1) is designed to preserve (i) a lawyer's right to practice and (ii) ensure a client's freedom and ability to select a lawyer of his or her choice by prohibiting private agreements that would otherwise limit the availability of certain lawyers. *See* N.Y. State Bar Ass'n Ethics Op. 1151 (2018) ("Agreements prohibited by Rule 5.6(a)(1) limit the pool of available attorneys, a client's choice of legal counsel, and a lawyer's autonomy in accepting new engagements."); *see also* Rule 5.6, Comment [1] ("An agreement restricting the right of lawyers to practice after leaving a firm not only limits their professional autonomy but also limits the freedom of clients to choose a lawyer. Paragraph (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.")[5]; Simon's New York Rules of Professional Conduct Annotated, Overview of Rule 5.6 ("The policy underlying the rule is to preserve a wide range of choice of counsel for the public by prohibiting private agreements among lawyers that would make certain lawyers unavailable."); *Id.* at § 5.6:7 ("In short, the primary purposes of Rule 5.6(a)(1) are to (i) preserve the wide choice of counsel for clients and (ii) to remove unfair barriers to lawyers who desire to change firms.").

The comments to Rule 5.6 were recently revised to specifically address the issue as to whether agreements that impose financial penalties and disincentives on departing lawyers fall under Rule 5.6's prohibition. Comment 1E to Rule 5.6 states that "[a]greements ordinarily violate this rule if they . . . (iv) impose more severe financial penalties on departing lawyers who intend to compete, actually compete, are suspected of competing, or are presumed to be competing with the firm than are imposed on departed lawyers who do not compete."

This Committee recently reaffirmed the conclusion that "contractual restrictions that, directly or indirectly, prevent or financially discourage a lawyer from moving to and practicing at a competing firm, or impede a client's

ability to continue to be represented by the departing lawyer" are impermissible and provided still further guidance with respect to the imposition of financial disincentives in the context of partner departures. Noting that Rule 5.6, by its terms, applies only to restrictions imposed on a departing attorney after the termination of the relationship (but not to the Pre-Notice or Notice Period), N.Y. City Bar Ass'n Formal Op. 2023-1 emphasized that rules or restrictions imposed by a law firm during the Pre-Notice or Notice Period can have a similar impermissible effect of deterring competition and impinging on choice of counsel. Accordingly, it opined that a determination as to whether any particular agreements, requirement or rule related to departure or competition (at any time) is ethically permissible depends upon whether it is being imposed or applied to improperly interfere with a departing lawyer's ability to compete or to punish the departing lawyer.

In line with the rulings of *Cohen*, *Denburg* and their progeny, Rule 5.6 and its comments, and Formal Op. 2023-1, we believe that a determination as to the permissibility of the imposition of financial penalties and disincentives depends upon whether they have the effect, either express or in practice, of discouraging or deterring competition with the firm. This means that where a firm imposes financial penalties or disincentives on a departing lawyer, to determine whether they are permissible, the following factors should be considered: (i) would an objective third party with knowledge of the relevant facts and circumstances conclude that such terms do inhibit partners from competing with the law firm, or (ii) has the law firm applied the terms to penalize partners because they are leaving or have left the firm to compete with the firm.

Thus, any provision which by its terms applies differently to departing partners who compete clearly would be prohibited. Conversely, to the extent that a provision expressly applies and in practice is applied to all partners irrespective of their departure or the circumstances of that departure, it would not likely be prohibited. An example of the latter is a provision that makes a loan forgiven, provides for the distribution of profits or the return of partner capital only if a lawyer remains with the firm through a certain date and that provision applies irrespective of whether the lawyer leaves to join a competitor or not. However, as noted above, the Court of Appeals has held that even facial neutrality will still not save an agreement providing for financial penalties or disincentives if the *effect* of the provision is to

Case 1:26-cv-25508-JHR    Document 1-5    Filed 06/29/26    Page 7 of 8

improperly deter competition and thus impinge upon clients' choice of counsel. While the *effect* of a financial penalty or disincentive can be apparent from the language, terms or conditions of the provision, it can also result from the way it is applied or understood by the partners it will be applied.

The mere fact that a law firm has discretion in how to apply provisions imposing penalties or financial disincentives does not by itself make the terms anti-competitive and thus a violation of Rule 5.6(a). For example, a law firm may offer lawyers bonuses or other payments in the form of forgivable loans that require the lawyer to stay with the law firm for a designated period of time in order for the loan to be forgiven. But even in those situations, the law firm may always elect not to enforce—*i.e.,* to forgive—the balance of the loan in its discretion. Then, if a partner departs before the loan is to be forgiven by its terms and the law firm exercises its discretion not to require repayment, compliance with Rule 5.6(a) will depend on the considerations generally applied by the firm in determining whether to forgive the loan. If those considerations are not anti-competitive—such as if the departing partner has fulfilled their fiduciary duties to the firm or the loan is forgiven because the partner has departed because of health or personal issues—the forgivable loan is unlikely to run afoul of Rule 5.6(a).  On the other hand, if the law firm exercises its discretion to deter competition—*e.g.,* if a partner departs to practice law at a competitor firm, the loan is generally not forgiven, but if the partner departs for a government or in-house legal position where the they are in the position to refer client work to the law firm in the future, the loan is generally forgiven—then the provision is likely to be a violation of Rule 5.6. The same analysis would apply to a provision permitting a law firm to defer a substantial portion of a partner's annual compensation until the following year subject to the firm's discretion about whether to pay that compensation, allowing the law firm to exercise its discretion based on whether a partner departs the law firm for a competitor before the payment is made.

It is the opinion of this Committee that just as Rule 5.6(a) prohibits an agreement that would restrict a partner's right to practice by expressly imposing more severe financial disincentives on a partner who intends to compete with the law firm upon departure, it also prohibits facially neutral provisions that provide a law firm with discretion where the law firm uses that discretion  to impose financial disincentives on a departing lawyer who

Case 1:26-cv-25508-JHR    Document 1-5    Filed 06/29/26    Page 8 of 8

intends to compete (or where a reasonable person would conclude that such terms inhibit departing partners from competing with the law firm).

**CONCLUSION:**

Law firm partnership and employment agreements, policies or rules that provide for financial forfeitures, assessments or disincentives that do, or the effect of which in practice is to, prevent or delay attorney departure when the attorney intends to compete with the firm are impermissible under Rule 5.6(a) of the New York Rules of Professional Conduct. This is not to say that if there are other (permissible) reasons for imposing the financial penalty on the departing partner who happens to go to a competitor, the restriction is impermissible.



**FOOTNOTES**    ⌄

**Committees**    ⌄

**Subject Areas**    ⌄

**Issues**    ⌄

**Share**

DOWNLOAD PDF

# Related events

# Related media

# Related reports