ALLAN S. BLOOM
MELANIE M. SPEIGHT
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3880

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLIFFORD CONE AND MICHAEL SABIN,<br><br>Plaintiffs,<br><br>v.<br><br>CLIFFORD CHANCE LLP,<br><br>Defendant. | No. 1:26-CV-05508 (JHR) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO DECLINE TO EXERCISE JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT AND DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

RELEVANT FACTUAL ALLEGATIONS ..... 2

ARGUMENT ..... 4

I. THE FAA REQUIRES THE COURT TO COMPEL ARBITRATION AND DISMISS THIS ACTION. ..... 4

A. This Dispute Is Governed by the FAA. ..... 4

B. The FAA Requires Arbitration of the Claim Asserted in the Complaint. ..... 5

C. Choice of Law in Arbitration Is an Issue for the Arbitrator, Not the Court. ..... 9

II. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT AND DISMISS THE COMPLAINT ..... 12

A. The Admiral Factors Support Declining to Exercise Jurisdiction Over Plaintiffs' Declaratory Judgment Act Claim ..... 13

B. Public Policy Is Not a Relevant Factor, and In Any Event, New York Public Policy Favors Arbitration, Particularly for Sophisticated Parties. ..... 15

CONCLUSION ..... 17

CERTIFICATE OF COMPLIANCE ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
57 F.4th 85 (2d Cir. 2023) ....................2, 13, 16

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................6

*Bergesen v. Joseph Muller Corp.*,
710 F.2d 928 (2d Cir. 1983)....................5

*Brunckhorst v. Bischoff*,
No. 21 Civ. 4362 (JPC), 2024 WL 4277788 (S.D.N.Y. Sept. 24, 2024)....................14, 15

*Chen-Oster v. Goldman, Sachs & Co.*,
449 F. Supp. 3d 216 (S.D.N.Y. 2020)....................17

*Corpus Christi Independent School District v. AMRISC, LLC*,
No. 19-cv-301, 2019 WL 2051696 (E.D.N.Y. May 9, 2019)....................14

*Daly v. Citigroup Inc.*,
939 F.3d 415 (2d Cir. 2019)....................7

*Dow Jones & Co., Inc. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003)....................12, 13, 16

*Dr.'s Assocs., Inc. v. Alemayehu*,
934 F.3d 245 (2d Cir. 2019)....................6

*Green Tree Fin. Corp. Alabama v. Randolph*,
531 U.S. 79 (2000)....................7

*Harrington v. Atl. Sounding Co., Inc.*,
602 F.3d 113 (2d Cir. 2010)....................7

*Herman v. Katten Muchin Rosenman LLP*,
No. 25-CV-3162 (JHR) (RWL), 2025 U.S. Dist. LEXIS 167091 (S.D.N.Y. Aug. 27, 2025) ....................8, 9

*Herman v. Katten Muchin Rosenman LLP*,
No. 25 CIV. 3162 (JHR) (RWL), 2026 U.S. Dist. LEXIS 167991 (S.D.N.Y. July 28, 2026)....8

*Hines v. Overstock.com, Inc.*,
380 F. App'x 22 (2d Cir. 2010) ....7

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)....11

*John Wiley & Sons, Inc. v. Livingston*,
376 U.S. 543 (1964)....12

*Lumbermens Mut. Cas. Co. v. Conn. Bank & Tr. Co.*,
806 F.2d 411 (2d Cir. 1986)....15, 16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)....6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....6

*N.Y. v. Oneida Indian Nation of N.Y.*,
90 F.3d 58 (2d Cir. 1996) ....7

*Nationwide Gen. Ins. Co. v. Investors Ins. Co.*,
37 N.Y.2d 91 (1975) ....16

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)....6

*Pincus v. Motulsky*,
237 A.D.3d 624 (1st Dep't 2025) ....10

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)....6

*Selendy v. Quinn Emanuel Urquhart & Sullivan, LLP*,
63 Misc. 3d 954 (Sup. Ct. N.Y. Cnty. 2019) ....10, 11, 17

*Smith Barney Shearson Inc. v. Sacharow*,
91 N.Y.2d 39 (1997) ....16

*Sprinzen v. Nomberg*,
46 N.Y.2d 623 (1979) ....16

*TCR Sports Broad. Holding, LLP v. WN Partner, LLC*,
40 N.Y.3d 71 (2023) ....17, 18

*Transp. Workers Union of Am. v. Veolia Transp. Servs., Inc.*,
24 F. Supp. 3d 223 (E.D.N.Y. 2014) ....................8, 9

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)....................12, 16

*Zurich Ins. Co. v. Ennia Gen. Ins. Co.*,
882 F. Supp. 1438 (S.D.N.Y. 1995)....................10

**STATUTES**

9 U.S.C. § 2....................6

9 U.S.C. § 4....................6, 8

9 U.S.C. § 202....................5

9 U.S.C. § 203....................5

9 U.S.C. § 206....................9

9 U.S.C. § 208....................5

28 U.S.C. § 2201(a) ....................12

UNCITRAL Arbitration Rule Article 35, § 1 ....................4, 14

## PRELIMINARY STATEMENT

This contractual dispute does not belong before the Court. Plaintiffs Clifford Cone and Michael Sabin acknowledge, as they must, that they agreed to arbitrate any disputes arising from their relationship as retired partners of Defendant Clifford Chance LLP and non-party Clifford Chance US LLP. Specifically, the parties have agreed to engage in alternative dispute resolution processes culminating in confidential arbitration before a sole arbitrator in Geneva, Switzerland, in accordance with the UNCITRAL Arbitration Rules. Plaintiffs concede that all roads lead to arbitration, yet, because Plaintiffs misguidedly profess that it will provide them with a tactical advantage, they invoke the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to ask this Court to supplant the role of the arbitrator by predetermining the law that will govern the parties' arbitration. This ploy contravenes the parties' agreement, infringes upon the province of the arbitrator, and misuses the resources of this Court to no effective end.

Defendant is aware of no decisions in this Circuit that support using the Declaratory Judgment Act to circumvent a binding agreement to arbitrate in this manner. On the contrary, courts regularly reject such attempts to avoid outright or manipulate the outcome of the arbitral process and have recognized that the arbitrator—not any court—generally has the power to decide questions of governing law.

Two independent grounds compel dismissal here: First, the parties' own arbitration agreement—which Plaintiffs do not dispute—requires this dispute to be resolved in Geneva, not in this courthouse. The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), empowers—indeed, requires—the Court to compel arbitration of this dispute in accordance with the parties' unambiguous agreement, and to dismiss this action so that the parties may proceed, unimpeded, to the Geneva arbitration they bargained for. Second, even setting arbitrability aside, well-settled

principles of judicial restraint bar this Court from using its discretionary declaratory judgment power to referee a fight the parties agreed an arbitrator would decide. The factors that the Court must consider in determining whether to grant a declaratory judgment—including whether there is a "better or more effective remedy" and whether the declaratory judgment is being sought "merely for procedural fencing"—overwhelmingly weigh in favor of declining to exercise jurisdiction. *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023). Either ground, standing alone, warrants dismissal of the Complaint.

## RELEVANT FACTUAL ALLEGATIONS

Because this matter does not belong in this or any court, the facts relevant to Defendant's motion are limited and straightforward. Plaintiffs' allegations establish that the parties entered an arbitration agreement that covers this contractual dispute.

### The Parties

Defendant Clifford Chance LLP is a limited liability partnership of the fully integrated law firm generally referred to as Clifford Chance with a registered office at 10 Upper Bank Street, London, E14 5JJ, United Kingdom. Compl. ¶ 8. Non-party Clifford Chance US LLP is a New York limited liability partnership that operates across three offices in the United States as part of that same fully integrated law firm. Compl. ¶ 14; Ex. B § 2.2.[1] All partners in Clifford Chance US LLP, including Plaintiffs during their tenure with the Firm, are also partners in Defendant Clifford Chance LLP. Compl., Ex. B., § 7.2.

Plaintiffs Clifford Cone and Michael Sabin are sophisticated corporate attorneys who served as equity partners and co-heads of the Firm's U.S.-based Funds and Investment

[1] In this brief, we will refer to Defendant Clifford Chance LLP and non-party Clifford Chance US LLP together as "Clifford Chance" or the "Firm."

Management Practice Group until their retirement in January 2026. Compl. ¶¶ 4, 6,[2] 7, 42. Cone first became a partner of Clifford Chance in 2013 and then an equity partner in 2016 and Sabin first became a partner of Clifford Chance in 2017 and then an equity partner in 2020. Compl. ¶¶ 6, 7.

**Plaintiffs' Agreement to Arbitrate Claims Against Defendant**

Each of Cone and Sabin, upon becoming a partner of the Firm, agreed to be bound by both the Clifford Chance LLP Partnership Agreement dated December 1, 2006 (the "CCLLP Agreement"), and the Clifford Chance US LLP Partnership Agreement dated February 1, 2001 ("the CCUS Agreement," and together with the CCLLP Agreement, "the Partnership Agreements"). Compl. ¶ 18. The CCUS Agreement is governed by New York law, Compl. ¶ 32, and the CCLLP Agreement is governed by English law, Compl. ¶ 28.

The Partnership Agreements contain unambiguous dispute resolution provisions, including a broad and compulsory arbitration clause. Compl. ¶¶ 33-39. The CCUS Agreement states that "**[a]ny claim in contract, tort, or otherwise arising out of or relating to the CCUS Agreement or the partnership relationship … shall be resolved in accordance with the applicable dispute resolution procedures specified in the CCLLP Agreement.**" Compl. ¶ 33 & Ex. B, § 31.1 (emphasis added). The CCLLP Agreement in turn sets forth a detailed procedure for alternative dispute resolution, including arbitration. Compl. ¶¶ 34-37 & Ex. A §§ 24.1-24.12. After serving notice of a dispute, as defined by the CCLLP Agreement, negotiating, and attempting to mediate in accordance with the London Court of International Arbitration Mediation Procedures, disputes

[2] In paragraph 6 of the Complaint, Plaintiffs allege that Cone served as a partner until January 16, 2024. Upon information and belief, this is an inadvertent error. Cone, like Sabin, retired from Clifford Chance in January of ***2026***. *See* Compl. ¶¶ 40, 43. This error in the Complaint does not impact the arguments set forth herein.

**"shall be referred to and finally resolved in accordance with the UNCITRAL Arbitration Rules by a sole arbitrator in accordance with those Rules…. The appointing authority shall be the London Court of International Arbitration. The place of arbitration shall be Geneva, Switzerland."** Compl. ¶ 37 & Ex. A § 24.5 (emphasis added). Plaintiffs acknowledge and do not challenge the existence and terms of the arbitration agreement. Compl. ¶¶ 34-37.

After retiring from Clifford Chance, Plaintiffs challenged the Firm's application of a provision of the CCLLP Agreement to their post-retirement remuneration. Compl. ¶¶ 3, 23-28. Plaintiffs concede that the merits of this dispute belong in arbitration, not before this Court. Yet they contend that whether English law or New York law governs will be "outcome determinative" in that arbitration, on the theory that the provision at issue would run afoul of New York's prohibition on restrictive covenants for lawyers. Although Plaintiffs do not challenge the enforceability of the arbitration agreement itself, they nonetheless ask this Court to supplant the arbitrator's authority and predetermine a contractual question (*i.e.*, which jurisdiction's law should govern their dispute) that they have expressly delegated to the arbitrator to resolve.[3]

## <u>ARGUMENT</u>

### I. THE FAA REQUIRES THE COURT TO COMPEL ARBITRATION AND DISMISS THIS ACTION.

#### A. This Dispute Is Governed by the FAA.

Defendant is not a citizen of the United States. Compl. ¶ 8 (noting Defendant's

---

[3] The UNCITRAL Arbitration Rules—which the parties expressly agreed would govern their dispute, *see above*—state as follows with respect to the choice of law: "The arbitral tribunal shall apply the rules of law designated by the parties as applicable to the substance of the dispute. Failing such designation by the parties, ***the arbitral tribunal shall apply the law which it determines to be appropriate***." *See* UNCITRAL Arbitration Rules, available at https://uncitral.un.org/sites/default/files/media-documents/uncitral/en/21-07996_expedited-arbitration-e-ebook.pdf, at Article 35, § 1 (emphasis added).

incorporation in England and Wales and its principal place of business in London). As such, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") applies to this dispute because it is not "entirely between citizens of the United States." *See* 9 U.S.C. § 202; *Bergesen v. Joseph Muller Corp*., 710 F.2d 928, 932–33 (2d Cir. 1983) (holding that the Convention governs arbitration agreements and awards that are "made within the legal framework of another country, *e.g.*, pronounced in accordance with foreign law or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction").[4]

The FAA, including its provisions authorizing motions to compel arbitration, applies to disputes subject to the Convention. 9 U.S.C. § 208 ("Chapter 1 [of the FAA] applies to actions and proceedings brought under this chapter [2, regarding disputes subject to the Convention]"). In addition, the FAA confers original jurisdiction in the federal district courts over any action falling under the Convention. 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.").

**B. The FAA Requires Arbitration of the Claim Asserted in the Complaint.**

The FAA "embodies a national policy favoring arbitration." *Dr.'s Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019). Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. Thus, the FAA, and the strong federal policy favoring arbitration

[4] Although styled a "limited liability partnership," Clifford Chance LLP is, as a matter of English law, a body corporate formed by incorporation and possessing legal personality separate from its members—not a partnership in the traditional sense. *See* Limited Liability Partnerships Act 2000, c. 12, § 1(2) (U.K.) ("A limited liability partnership is a body corporate...which is formed by being incorporated under this Act.").

that it embodies, requires courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (discussing "liberal federal policy favoring arbitration" under FAA)); *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 229 (2d Cir. 2016) ("This policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes.") (alteration omitted) (quoting *Schnabel v. Trilegiant Corp*., 697 F.3d 110, 118 (2d Cir. 2012)). Indeed, courts are obligated to "place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC*, 563 U.S. at 339 (citations omitted). *See also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("Courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted.") (internal quotation marks and citation omitted).

When a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a court should compel arbitration of the dispute. *See* 9 U.S.C. § 4 ("[T]he court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). In reviewing a motion to compel arbitration, the court must determine: "(1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and, (3) if federal statutory claims are asserted, ... whether Congress intended those claims to be nonarbitrable." *Daly v. Citigroup Inc*., 939 F.3d 415, 421 (2d Cir. 2019) (internal quotation marks omitted). Any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitrability. *Id.* ("In accordance with the 'strong federal policy favoring arbitration as an alternative means of dispute resolution,' we resolve any doubts concerning the scope of arbitrable

issues 'in favor of arbitrability.'") (citing *N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996)). The Second Circuit has made clear that it "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Daly*, 939 F.3d at 421. Application of these factors clearly requires that Plaintiffs be compelled to arbitration here.

The party moving to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). The moving party need not "show initially that the agreement would be *enforceable,* merely that one existed." *Id.* (emphasis in original). Thereafter, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000).

It is uncontested that the parties have entered a written agreement to arbitrate any dispute arising from the terms of the Partnership Agreements, including the contractual dispute that Plaintiffs seek to raise. Compl. ¶¶ 2, 33-39, 68, 71-74. Plaintiffs do not allege that the arbitration agreement is inapplicable or invalid. As such, the FAA requires the Court to compel Plaintiff's claim to arbitration. *See* 9 U.S.C. § 4.

The Court's recent decision in *Herman v. Katten Muchin Rosenman LLP*, No. 25 CIV. 3162 (JHR) (RWL), 2026 U.S. Dist. LEXIS 167991 (S.D.N.Y. July 28, 2026), overruling objections to the decision and order of the Honorable Robert W. Lehrburger compelling arbitration, is instructive. The defendant law firm ("Katten Muchin") moved to compel arbitration under the FAA after a former partner ignored his obligations to pursue arbitration and commenced

suit against the firm based on his termination and the alleged denial of benefits. *Id.* Judge Lehrburger recognized that plaintiff's relationship with Katten Muchin was governed by the firm's partnership agreement, which contained a broad mandatory arbitration clause covering "any legal or equitable claim, demand, or dispute" between a former partner and the firm "arising out or relating to the Agreement … or a Partner's relationship with the Firm[.]" *Herman v. Katten Muchin Rosenman LLP*, No. 25-CV-3162 (JHR) (RWL), 2025 U.S. Dist. LEXIS 167091, at *2 (S.D.N.Y. Aug. 27, 2025). As here, the Katten Muchin partnership agreement set forth alternative dispute processes to be followed before proceeding to arbitration. *Id.*, at *2-*3. Failing resolution, the Katten Muchin partnership agreement mandated arbitration in Chicago under the rules of the American Arbitration Association. *Id.*, at *3. Judge Lehrburger noted that "critically" the parties did not dispute that the partnership agreement was a valid agreement to arbitrate or that the plaintiff's alleged claims fell within the scope of the arbitration agreement. Consequently, the Court took care to avoid "questions relating to the procedures for arbitration and substantive defenses to the arbitration which are for the arbitrator to decide" and constrained its review to the narrow and uncontested questions establishing that the parties had an arbitrable dispute based on the arbitration provision in the partnership agreement. *Id.*, at *5 (quoting *Transp. Workers Union of Am. v. Veolia Transp. Servs., Inc.*, 24 F. Supp. 3d 223, 230 (E.D.N.Y. 2014)). Upon reaching the conclusion that the parties had an arbitrable dispute, the Court determined that it was obligated under the FAA to stay the action pending arbitration. The Court (Rearden, J.) overruled the plaintiff's objections to Judge Lehrburger's decision and order. 2025 U.S. Dist. LEXIS 167991, at *13.

The uncomplicated facts of this case dictate the same result, in that the FAA mandates enforcing the parties' arbitration agreement. The CCUS Agreement states that "[a]ny claim in

contract, tort, or otherwise arising out of or relating to the CCUS Agreement or the partnership relationship … shall be resolved in accordance with the applicable dispute resolution procedures specified in the CCLLP Agreement." Compl. ¶ 33. Ex. B, § 31.1. The CCLLP Agreement in turn states that any disputes "shall be referred to and finally resolved in accordance with the UNCITRAL Arbitration Rules by a sole arbitrator in accordance with those Rules…. The appointing authority shall be the London Court of International Arbitration. The place of arbitration shall be Geneva, Switzerland." Compl. ¶ 37 & Ex. A § 24.5. Because the arbitration agreement designates Geneva, Switzerland as the seat of arbitration, the Court is expressly authorized to direct that arbitration proceed there. *See* 9 U.S.C. § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

Plaintiffs concede that their contractual dispute over the terms of the Partnership Agreements falls within the scope of their broad and compulsory arbitration agreement. Here, as in *Herman*, the Court need not and should not delve into substantive or procedural questions affecting the merits of the parties dispute for arbitration, including any choice of law analysis.

**C. Choice of Law in Arbitration Is an Issue for the Arbitrator, Not the Court.**

It has long been settled that where, as here, the parties have agreed to submit a dispute to arbitration, the question of what choice of law applies to the parties' claims or defenses is one for the arbitrator and not a court. *See, e.g.*, *Zurich Ins. Co. v. Ennia Gen. Ins. Co.*, 882 F. Supp. 1438, 1440 (S.D.N.Y. 1995) (rejecting a party's application for the district court to compel arbitrators to apply Florida state law to a dispute as "misguided" because when parties agree to arbitrate, the arbitrator shall decide choice of law questions); *accord Pincus v. Motulsky*, 237 A.D.3d 624, 625

(1st Dep't 2025) ("[I]t is generally incumbent on the arbitrator to pass upon whether to apply any choice of law in the context of resolving the parties' dispute where, as here, a broad arbitration provision exists").

Plaintiffs' supposition that the application of New York law is "appropriate" and "will likely be outcome dispositive with respect to the enforceability of the clawback and forfeiture provisions of" the CCLLP Agreement does not suspend the rule that it is the arbitrator's province to determine which law governs the parties' dispute. *See, e.g., Selendy v. Quinn Emanuel Urquhart & Sullivan, LLP*, 63 Misc. 3d 954, 959 (Sup. Ct. N.Y. Cnty. 2019) (directing New York attorneys and international law firm to proceed to arbitration with respect to the issue of whether a law partnership's forfeiture-for-competition provision violates New York public policy as an impermissible restraint on the practice of law—***as well as on the issue of which jurisdiction's law applies to the claim***). While not controlling in federal court, the State Supreme Court's opinion is strikingly on point:

> Petitioners may also raise before the arbitrator the important issue of whether the Partnership Agreement's choice of law provision, which provides that California law is applicable, should apply to determine the enforceability of section 5.1(a)(iii) against New York attorneys…. [I]t is for the arbitrator to pass upon whether to apply the choice of law provision in the context of resolving the parties' payment dispute where, as here, a broad arbitration provision exists…. Moreover, resolution of the choice of law issue by an arbitrator would not impermissibly interfere with the New York judiciary's ability to discipline New York attorneys.

*Id.* at 960 (internal citations omitted).

In their Complaint, Plaintiffs ignore the caselaw stating that an arbitrator, not a court, should decide choice of law questions and seek to broaden this Court's inquiry well beyond the narrow, uncontested, and dispositive inquiry that the FAA requires: *whether the parties have a valid arbitration agreement that covers the dispute at issue.* Because the arbitration agreement is

valid, and because Plaintiffs' dispute falls within it, the Court need not inquire further and must compel arbitration.

Moreover, Plaintiffs' entire argument rests on the unremarkable observation that the choice of law question could be "outcome dispositive." But many things can be outcome dispositive—*e.g.*, a ruling on the admissibility of a key document, the weight the arbitrator assigns to a witness's testimony, or the scope of permissible discovery could just as easily decide the case. If "outcome dispositive" were the test for judicial intervention, there would be no limiting principle to what authority a court could seize from the arbitrator: Should a court resolve discovery disputes in advance of an arbitration because the claimant anticipates they will be outcome dispositive? Should a court decide what time the arbitration convenes each day, or how many witnesses each side may call, because scheduling and procedure can shape the result too? Plaintiffs' theory has no logical stopping point, and it cannot be squared with the parties' undisputed and clear agreement to arbitrate.[5] If anything, Plaintiffs' own premise—that the choice of law ruling will be outcome dispositive—makes the case for arbitral, rather than judicial, resolution doubly compelling, not less. Plaintiffs are asking the Court to resolve, in advance, the very issue that they believe will determine who wins the arbitration—*before the arbitration has even commenced.* That is the opposite of what the FAA contemplates, and it is precisely the kind of premature, merits-driven intrusion into the arbitral process that compelling arbitration is meant to prevent.

---

[5] Nor does it matter whether choice of law is characterized as a "procedural" or "substantive" question—the parties delegated both categories to the arbitrator when they agreed to a broad arbitration clause. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (holding that "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide" (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964))).

## II. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT AND DISMISS THE COMPLAINT

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). But the statute "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). Courts have "consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).

Plaintiffs seek to avoid their contractual obligations to arbitrate the choice of law issue (and thereby to gain what they anticipate will be a strategic advantage in the balance of the arbitration) by invoking the Declaratory Judgment Act. But that act is not a vehicle for avoiding arbitration, and the factors courts consider in determining whether to decline to exercise discretion to grant a declaratory judgment expressly disavow such blatant gamesmanship. The Court should abstain here.

In determining whether to decline to exercise jurisdiction over a request for a declaratory judgment, courts are guided by the following six factors, to the extent that they are relevant to a particular case:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial

> efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Ins. Co.*, 57 F.4th 85, 99 (2d Cir. 2023) (cleaned up) (citations omitted)). Here, the *Admiral* factors overwhelmingly support declining to exercise jurisdiction.

**A. The Admiral Factors Support Declining to Exercise Jurisdiction Over Plaintiffs' Declaratory Judgment Act Claim.**

At the outset, Plaintiffs' tactic is precisely the kind of "procedural fencing" that leads courts to decline to exercise their jurisdiction under the Declaratory Judgment Act. Plaintiffs admit that obtaining a ruling on the choice of law question would, in their view, "likely be outcome dispositive." Compl. ¶ 53. Thus, by seeking relief to which they are plainly not entitled, Plaintiffs hope to sway the outcome of the parties' arbitration—a strategy that can only be characterized as gamesmanship.

The fifth *Admiral* factor asks "whether there is a better or more effective remedy" than a declaratory judgment action. 57 F.4th at 100; *see also Dow Jones*, 346 F.3d at 359–60. There clearly is a more effective remedy here—Plaintiffs accept that the parties have contractually agreed to arbitrate their dispute. It would be ineffective for the Court to issue a determination that would invade the responsibilities of the arbitrator and likely lead to further and more complicated proceedings involving the impact and propriety of a substantive judicial decision on an arbitrable dispute.

This case closely parallels *Corpus Christi Independent School District v. AMRISC, LLC*, No. 19-cv-301, 2019 WL 2051696 (E.D.N.Y. May 9, 2019). There, as here, a plaintiff sought a declaratory judgment on a choice of law question arising under a contract containing a broad arbitration clause. *Id.*, at *2–4. The plaintiff asked the court "to weigh in on a dispute between the parties regarding a provision in the arbitration agreement"—specifically, "whether New York

law or Texas law is the proper law to decide the issue of extra contractual damages." *Id.*, at *2. The court rejected the request because the arbitrator was the appropriate decision-maker for such issues. *Id.*, at *4 & n.4. The same reasoning applies here: Plaintiffs ask this Court to "weigh in" on a choice of law question arising under a partnership agreement containing an arbitration clause—a question the arbitrator is fully empowered to resolve, including under the specific rules the parties agreed would govern the arbitration (*see* UNCITRAL Arbitration Rule Article 35, § 1, discussed *supra* n.3).

Plaintiffs' conclusory assertion that a declaratory judgment "would be the best and most effective remedy to resolve this Dispute" (Compl. ¶ 59) is both utterly self-serving and illogical. Here, arbitration can resolve both the choice of law question and the merits of the underlying compensation dispute in a single proceeding. The arbitrator is fully equipped and empowered to determine whether New York law or English law governs the parties' dispute, and the rules of the forum state exactly how that choice of law decision is to be made. Thus, arbitration can resolve more than a declaratory judgment action can and is accordingly not only the more efficient remedy, but the course that best serves judicial economy. *See, e.g.*, *Brunckhorst v. Bischoff*, No. 21 Civ. 4362 (JPC), 2024 WL 4277788, at *24 (S.D.N.Y. Sept. 24, 2024) (declining declaratory relief under the *Admiral* factors where "a better remedy does exist to resolve all related questions" in a proceeding where "the judge or arbitrator can resolve at once" all disputed issues, and where declaratory relief would "only serve to tie the hands of a court or arbitrator in a future case").

By contrast, entertaining Plaintiffs' declaratory judgment claim would require the Court to expend judicial resources on a partial resolution of a dispute that must ultimately be resolved in arbitration regardless of what this Court declares. Moreover, a declaratory judgment from the Court on which law should apply to this dispute would not be binding on the arbitrator under the

UNCITRAL Rules that the parties have agreed would govern. *See supra n.3*.

This action therefore adds a duplicative, piecemeal layer of litigation atop the arbitration that the arbitrator would be entitled to disregard—it does not replace or streamline it. Courts have long disfavored such piecemeal adjudication in the declaratory judgment context. *See Brunckhorst*, 2024 WL 4277788, at *24 ("It is well established that courts look with disfavor on piecemeal litigation of the matters in controversy and may refuse declaratory relief on those grounds"); *see also Lumbermens Mut. Cas. Co. v. Conn. Bank & Tr. Co.*, 806 F.2d 411, 414 (2d Cir. 1986) ("The avoidance of piecemeal litigation should be given great weight in the context of declaratory judgment actions because such litigation would complicate and fragment the trial of cases . . . "), abrogated on unrelated grounds by *Wilton*, 515 U.S. at 281-82. By contrast, resolving the choice of law question within the arbitration is the single most efficient path: it avoids maintaining two proceedings, eliminates the risk of inconsistent rulings, and honors the parties' contractual bargain for a single, confidential, consolidated dispute resolution process.

### B. Public Policy Is Not a Relevant Factor, and In Any Event, New York Public Policy Favors Arbitration, Particularly for Sophisticated Parties.

Plaintiffs' attempt to invoke New York public policy to justify their request for a declaratory judgment is specious and should be rejected. As a preliminary matter, public policy is not among the six factors used to guide the Court's discretion to decide a declaratory judgment action. *Admiral Ins. Co.*, 57 F.4th at 99–100. Nor does the test enumerated in *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003)—cited by Plaintiffs in their Complaint—include a public-policy factor as part of the required analysis. Even if public policy was relevant (which it is not), New York's public policy cuts against—not in favor—of retaining this action.

New York has a "long and strong public policy favoring arbitration," under which "New York courts interfere as little as possible with the freedom of consenting parties to submit disputes

to arbitration." *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 49–50 (1997) (internal quotation marks omitted). The state "favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties." *Id.* (quoting *Nationwide Gen. Ins. Co. v. Investors Ins. Co.*, 37 N.Y.2d 91, 95 (1975)). And as the Court of Appeals has cautioned, courts "must exercise due restraint" in invoking public policy to decide disputes committed to arbitration, because "arguably every controversy has at its core some issue requiring the application, or weighing, of policy considerations." *Sprinzen v. Nomberg*, 46 N.Y.2d 623, 630 (1979).

In fact, and as discussed *supra*, ***a New York Court has already squarely rejected the argument that public policy warrants a court, rather than an arbitrator, to decide a choice-of-law question—even where, as here, the underlying dispute concerns the enforceability of a law firm partnership's allegedly anticompetitive forfeiture provisions against departing partners who were attorneys practicing in New York.*** In *Selendy v. Quinn Emanuel Urquhart & Sullivan, LLP*, 63 Misc. 3d 954 (Sup. Ct. N.Y. Cnty. 2019), the petitioners argued that New York's public policy against anticompetitive law firm forfeiture-for competition provisions warranted judicial resolution of which state's law governed a partnership agreement's choice of law provision. The Commercial Division of the New York State Supreme Court rejected the policy argument, because the "resolution of the choice of law issue by an arbitrator would not impermissibly interfere with New York judiciary's ability to discipline New York attorneys." *Id*. at 959-60. The same reasoning applies with full force here: the Partnership Agreements contain broad arbitration provisions and resolution of the choice of law question by the arbitrator would not impermissibly interfere with any New York policy interest, including those Plaintiffs invoke in the Complaint.

Plaintiffs' own sophistication reinforces this conclusion. New York's "well-established

rules of contract law, which apply to arbitration agreements, provide that courts will enforce a commercial contract between sophisticated and counseled parties according to the contract's terms." *TCR Sports Broad. Holding, LLP v. WN Partner, LLC*, 40 N.Y.3d 71, 76 (2023). That rule carries particular weight here: New York courts apply the presumption that a written agreement reflects the parties' true intent "with even greater force" where, as with Plaintiffs, the signatories are themselves sophisticated and highly compensated actors. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 242 (S.D.N.Y. 2020).

Plaintiffs are practicing attorneys who have and continue to serve as equity partners in elite international law firms, representing investment funds, investment advisers, and private equity funds. (Compl. ¶¶ 6–7.) Plaintiffs, as attorneys themselves, were well-positioned to understand the implications of the Partnership Agreements that they knowingly accepted and the arbitration and choice of law provisions contained within them. *See TCR Sports*, 40 N.Y.3d at 87–88 (sophisticated, counseled parties who agreed to arbitrate "have failed to establish any basis to deviate from that contract"). Nor is the public interest in the rule of law and the freedom of contract served by allowing lawyers to play fast and loose with agreements that they knowingly enter into when the terms of those agreements no longer inure to their financial benefit.

## CONCLUSION

Plaintiffs are sophisticated lawyers who negotiated and accepted an unambiguous agreement to arbitrate in Geneva under the UNCITRAL Arbitration Rules, and they should not be permitted to rewrite that bargain now that its terms are inconvenient to them. What Plaintiffs ask of this Court—to decide, in advance, the very issue they believe will determine who wins the arbitration—is not a legitimate use of the Declaratory Judgment Act; it is a transparent attempt to hijack the arbitral process before it even begins, and an abuse of judicial resources. If that gambit

succeeded, no arbitration clause would be worth the paper it is printed on: any party dissatisfied with its bargain could simply brand an issue "outcome dispositive" and demand a judicial end run around the arbitration it had agreed to. This Court should close that door, not open it.

For the foregoing reasons, the Court should compel arbitration of this dispute in accordance with the clear terms of the parties' agreement as set forth in the Partnership Agreements and dismiss the Complaint. In the alternative, the Court should decline to exercise jurisdiction over Plaintiffs' declaratory judgment claim and dismiss the Complaint on that independent basis.

Dated: New York, New York
August 14, 2026

Respectfully submitted,

PROSKAUER ROSE, LLP

By: /s/ *Allan S. Bloom*

Allan S. Bloom
Melanie M. Speight
Eleven Times Square
New York, NY 10036
(212) 969-3880
abloom@proskauer.com
mspeight@proskauer.com

**CERTIFICATION OF COMPLIANCE WITH INDIVIDUAL PRACTICE RULE 5.B.**

Pursuant to Provision 5.B of the Court's Individual Rules and Practices, I certify that the preceding Memorandum of Law in Support of Defendant's Motion to Compel Arbitration and Dismiss the Complaint or, in the Alternative, to Decline to Exercise Jurisdiction Under the Declaratory Judgment Act and Dismiss the Complaint complies with the Court's 8,750-word limit. The memorandum of law, excluding any index, tables, signature blocks, and this certification, contains 5,635 words.

Dated: New York, New York
August 14, 2026

Respectfully submitted,

PROSKAUER ROSE, LLP

By: /s/ *Allan S. Bloom*

Allan S. Bloom
Melanie M. Speight
Eleven Times Square
New York, NY 10036
(212) 969-3880
abloom@proskauer.com
mspeight@proskauer.com