NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
AUSTIN
HANOI
HO CHI MINH CITY

DuaneMorris®

*FIRM and AFFILIATE OFFICES*

LESLIE D. CORWIN
DIRECT DIAL: +1 212 692 1047
PERSONAL FAX: +1 212 879 8093
*E-MAIL:* LDCorwin@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR

ALLIANCES IN MEXICO
AND SRI LANKA

August 28, 2026

**VIA ECF**

Hon. Jennifer H. Rearden, U.S.D.J.
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *Cone, et al. v. Clifford Chance LLP* (Docket No.: 1:26-cv-5508-JHR-OTW)**

Dear Judge Rearden:

We are the attorneys for Plaintiffs Clifford Cone and Michael Sabin ("Plaintiffs") in the above-referenced matter. Pursuant to Rule 5.C of Your Honor's Individual Rules and Practices in Civil Cases, Plaintiffs respectfully submit this letter outlining the substantive arguments set forth in Plaintiffs' Opposition to Defendant Clifford Chance LLP's (the "Firm") Motion to Compel Arbitration and Dismiss the Complaint (the "Motion") (ECF No. 18).

The Firm's Motion mischaracterizes the relief sought. Plaintiffs do not attempt to avoid Arbitration, nor do they ask this Court to decide the merits of the underlying Dispute. They request only that the Court resolve a question of contract interpretation which is antecedent to the Arbitration entirely: under which Agreement the Arbitration arises, and in effect, whether New York or English law governs the Arbitration. The Firm's US and UK Partnership Agreements contain directly conflicting choice-of-law provisions. This conflict was created exclusively by the Firm. Because the US Partnership Agreement governs US-based partners and triggers the right to Arbitration, this conflict between the Partnership Agreements must be resolved before the Arbitration can proceed. Resolution of this question presented is the quintessential "gateway" issue of arbitrability that belongs to this Court, not to an Arbitrator. A Declaration from this Court will allow the agreed-upon Arbitration to proceed on the correct legal footing, pursuant to the correct operative Partnership Agreement, and will otherwise avoid the potential for a subsequent vacatur proceeding in this Court.

**Factual Background**

Plaintiffs are New York residents and, before retiring from the Firm, served as co-Chairs of the Firm's US-based Funds and Investment Managements Practice Group, based at all times in its New York office. Complaint ("Compl."), ¶¶ 4, 6-7. Plaintiffs are signatories to the Firm's UK and US Partnership Agreements. Compl., ¶¶ 13, 15, 18. The UK Partnership Agreement purports to apply to all Partners and states that English law governs. Meanwhile, the US Partnership Agreement applies to the Firm's US-based Equity- and Non-Equity Partners and states that New York law governs. Compl. ¶¶ 20, 28-29, 32. The Agreements therefore do not identify a single, consistent governing law applicable to this Dispute.

The Parties' conflict is concrete, not hypothetical. On March 9, 2026, after Plaintiffs notified the Firm that they were retiring to join a competing law firm, Sidley Austin LLP, the Firm advised each Plaintiff that it was applying Schedules 5 and 6 of the UK Partnership Agreement and seeking substantial claw-backs: $4,356,966 from Mr. Cone and $1,398,653 from Mr. Sabin. Compl., ¶¶ 44–47. Schedule 5 ties those financial consequences to a retiring Equity Partner's intention to work in a capacity that "competes with" the Firm. Compl., ¶ 50.

**This Court Should Deny the Firm's Motion to Compel Arbitration**

The FAA requires courts to place arbitration agreements on equal footing with other contracts and enforce them according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339-40 (2011) (citations omitted). Prior to enforcing an agreement "according to its terms," however, the Court must determine what those terms are. Pursuant to *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002) and its progeny, questions of arbitrability are gateway determinations to be resolved by a court, not an arbitrator, unless the parties clearly and unmistakably provide otherwise. That is not the case here. Accordingly, prior to Arbitration, both Parties are entitled to a Declaration clarifying under which Agreement the Arbitration arises, and as a consequence, which body of law shall be applied.

The Supreme Court's decision in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) is particularly instructive. In *Suski*, when confronted with two controlling agreements imposing materially conflicting terms concerning the forum for resolving claims, the Supreme Court held that "a court," not an arbitrator, must decide which contract governs. *Id.* at 146-47, 152. That principle contains no requirement that the antecedent conflict exist between an arbitration clause and a forum-selection clause. Nevertheless, the UK Partnership Agreement also contemplates proceedings "in any court of competent jurisdiction." Ex. A to Compl. (ECF No. 11), ¶ 24.12. The contradictory governing-law provisions between the UK and US Partnership Agreements raise gateway questions of arbitrability, specifically, (i) under which Agreement the Arbitration actually arises, and (ii) whether, in light of this conflict, the Agreements evince an intent to

arbitrate. Therefore, the Firm's reliance on *Herman v. Katten Muchin Rosenman LLP*, 2026 WL 2462725 (S.D.N.Y. Aug. 27, 2025), is misplaced. That case involved a plaintiff who sought to litigate the merits of his claim. Here, Plaintiffs do not seek to avoid Arbitration. Rather, they ask the Court to issue relief with respect to the threshold conflict between operative contracts going to the heart of questions of arbitrability. The Firm's reference to *Zurich*, 882 F. Supp. 1438 (S.D.N.Y. 1995), *Pincus*, 237 A.D.3d 624 (1st Dep't 2025), and *Selendy*, 63 Misc. 3d 954 (Sup. Ct. N.Y. Cnty. 2019), fails for principally the same reason. Each of those decisions concern either attempts to avoid a valid arbitration clause, or requests for pure choice-of-law determinations pertaining to a single, unambiguous arbitration agreement.

**The *Admiral* Factors Weigh Overwhelmingly in Favor of Exercising Jurisdiction**

When considering all six factors outlined in *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99-100 (2d Cir. 2023), it is evident that the Declaratory Judgment Act is the appropriate vehicle for the limited relief Plaintiffs seek. Specifically, and among other things, a Declaration will provide relief from uncertainty, clarify under which Partnership Agreement the Arbitration arises (and therefore, which law should apply), eliminate the Parties' core dispute, allow the Arbitration to proceed expeditiously, and allow the Parties to avoid the incorrect application of an erroneous body of law. Simply because this Court's Declaration may ultimately prove outcome-dispositive does not mean that Plaintiffs have engaged in "procedural fencing" or that a Declaration would encroach upon the domain of any other court or tribunal. To the contrary, declining jurisdiction would create far greater friction. It would effectively force New York attorneys to arbitrate certain rights recognized under the New York Rules of Professional Conduct before a foreign tribunal in Geneva, Switzerland, which may apply English law thereby wholly dispensing with New York State's mandatory ethical framework.

Issuing a Declaratory Judgment would also be the most effective remedy to this specific Dispute. The Firm's contention that Arbitration can simultaneously resolve the choice-of-law and underlying Dispute ignores the consequence of allowing an Arbitrator to apply the improper law: the potential for an unenforceable arbitral decision running counter to New York's public policy requiring vacatur before this Court. To that effect, New York's public policy is a highly relevant consideration. Formal Opinion 2025-3 confirms the principle of New York law (established in *Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95 (1989) and its progeny) that law firm partnership agreements imposing financial penalties for competition – exactly the sort of penalty the Firm is seeking to enforce – are unenforceable as a matter of law. Where the application of foreign law would violate a fundamental public policy of the forum state, as here, courts have both the authority and obligation to intervene. *Estee Lauder Cos. Inc. v. Batra*, 430 F. Supp. 2d 158, 170 (S.D.N.Y. 2006). This Court has the opportunity to resolve this contradiction and opine on a matter of great public importance to both the legal profession and New York public policy. The Court should seize the opportunity and not step aside, as the Firm's Motion suggests.

Respectfully submitted,

Leslie D. Corwin